**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROBYN L. STEWART,                    Case No. 1:15-cv-275

         Plaintiff,                             Barrett, J.
                                                           Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robyn L. Stewart filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") on October 11, 2011, alleging a disability onset date of March 14, 2008, primarily due to physical complaints including back and shoulder pain. (Tr. 107).  Plaintiff's applications were denied initially and upon reconsideration in 2012. (Tr. 121-124, 130-136).  In August 2013, Administrative Law Judge ("ALJ") Vincent Misenti held a hearing, at which Plaintiff appeared with counsel.  Plaintiff, her attorney, and a vocational expert all testified.  ALJ Misenti issued a decision on October 24, 2013, concluding that Plaintiff was not disabled. (Tr. 41-52).  The Appeals Council denied review; therefore, the ALJ's decision

remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 51 years old on the date last insured, which is defined as a "younger individual". However, the Plaintiff has since changed to the age category of closely approaching advanced age. She has an eleventh grade education and has past relevant work as a billing typist and general clerk. (Tr. 50). Plaintiff alleges disability based on chronic neck and back pain. She is insured for purposes of DIB through December 31, 2012.

Through the date last insured, the ALJ determined that Plaintiff has the following "severe" impairments: "cervical and lumbar degenerative joint disease and bilateral shoulder impingement." (Tr. 43). The ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id*). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of light work, except:

> [T]he claimant could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; however, she could never crawl or climb ladders, ropes, or scaffolds. Further, the claimant is limited to occasional overhead reaching bilaterally.

(Tr. 46). Although the vocational expert testified in response to a hypothetical that someone with the above RFC could perform most of Plaintiff's prior unskilled jobs (Tr. 87), in deference to the Plaintiff, the ALJ found that she could not perform *any* of her past relevant work through the date last insured. (Tr. 50). Despite being unable to perform prior work, the ALJ determined, based on the VE's testimony, that Plaintiff still

2

could perform representative unskilled, light level jobs such as hand packer and inspector. (Tr. 51). Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 52).

In her Statement of Errors, Plaintiff specifically argues that the ALJ erred by: (1) not affording controlling weight to the opinion of the treating physician; and (2) improperly relying on the vocational expert's testimony. Plaintiff's arguments are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

**1. Evaluation of Medical Opinion Evidence**

Plaintiff first argues that the ALJ erred by not giving controlling weight to the opinions of treating physician Carl M. Shapiro, M.D. (Doc. 7 at 7-11). Plaintiff further complains that the ALJ erred by assigning greater weight to examining physician Jennifer Wischer Bailey, M.D., and the state agency reviewing physicians Steve E. McKee, M.D., and Leslie Green, M.D. (Doc. 7 at. 9; Tr. 49, 95-103, 107-16). Plaintiff's contentions are not well-taken.

Here, the record contains the following opinion evidence:

In January 2012, Dr. Bailey performed a consultative examination of Plaintiff wherein, Dr. Bailey observed that aside from diminished cervical range of motion and discomfort with left overhead reaching, Plaintiff walked with a normal gait without the use of assistive devices, had negative straight leg raises, a normal range of motion of her back, and normal grasp and manipulative strength. (Tr. 48-49, citing 479-80). Dr. Bailey further observed that there was no evidence of radiculopathy from the cervical or lumbar spines. (Tr. 48, citing 480). Dr. Bailey determined that Plaintiff appeared capable of performing at least mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (Tr. 49, 480).

In February 2012, Dr. Mckee, a state agency physician, reviewed the record and found that Plaintiff's medical history incudes herniated discs, chronic pain, lumobsacral sprain, sciatic nerve, radiculopathy, failed fusion, spondylosis (right and left shoulder), headaches and depression. (Tr. 100). In spite of these impairments, Dr. Mckee found

5

that Plaintiff was capable of performing a range of light work. In June 2012, Dr. Green, another state agency physician, review the record evidence and also determined that Plaintiff was capable of performing a range of light work. (Tr. 116)

In July 2013, Dr. Shapiro completed a medical assessment outlining his patient's restrictions, wherein Dr. Shapiro opined in that Plaintiff could occasionally lift/carry up to ten pounds; sit/stand/walk only one hour each during an eight-hour workday; and never reach floor level or climb ladders. (Tr. 554-59). He further found that Plaintiff's reaching is limited in all direction to an occasional basis and standing, walking and sitting are limited to an hour each in an eight hour work day. (*Id*). Dr. Shapiro also concluded that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 558).

In evaluating Plaintiff's RFC assessment the ALJ assigned "little weight" to the findings of Dr. Shapiro. In so concluding, the ALJ determined that Dr. Shapiro's opinions were inconsistent with his own treatment notes and were inconsistent with other medical evidence of record. (Tr. 48-50). See 20 C.F.R. § 404.1527(c). The ALJ acknowledged that Dr. Shapiro treated Plaintiff for her physical symptoms every one to two months since around April 2013. (Tr. 48). Plaintiff argues that the ALJ erred in failing to give controlling weight to the findings of Dr. Shapiro. Plaintiff's contention is not well-taken.

Social security regulations generally provide for an order of hierarchy in the evaluation of medical opinion evidence, with the opinions of treating physicians to be given the most weight, and the opinions of examining consultants to be given greater weight than the opinions of non-examining consultants. The specific regulation

6

regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

If an ALJ rejects the opinion of a treating physician, he or she is required to provide "good reasons." 20 C.F.R. § 404.1527(c)(2).

> These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)

The referenced general hierarchy of opinion evidence is not without exceptions. In accord with the regulatory language, controlling weight need not be given to a treating source's medical opinion that is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or one that is "inconsistent with the other substantial evidence in the record." And that no weight at all need be given to dispositive legal (as opposed to medical) opinions. For example, a treating physician's conclusion that an individual is disabled would not be given controlling weight, since that issue is "reserved to the Commissioner." 20 C.F.R. §404.1527(d). Though frequently litigated, both regulations and case law make clear that an ALJ may give the greatest weight to the opinions of even a non-examining consultant in appropriate circumstances. *See* SSR 96-6p; *accord Miller v. Com'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016).

Here, in assigning little weight to Dr. Shapiro's opinions related to Plaintiff's physical abilities, the ALJ found that such opinions were conclusory in nature, and that his extreme exertional limitations were not supported by the objective evidence of record. (Tr. 50).

The record indicates that Plaintiff began treating with Dr. Shapiro, a pain management specialist, in approximately April 2012. Prior to her treatment with Dr. Shapiro, the evidence of record contains mild to normal findings. Notably, in December 2007, Plaintiff underwent anterior cervical discectomony at the C5-6 and C6-7 levels. She tolerated the procedure well and responded adequately to surgery. The record also indicates that post-operative imaging revealed normal findings.

In May 2009, imaging of Plaintiff's shoulders showed only a mild degree of AC

joint arthritis, and she maintained full range of motion with no evidence of neurovascular deficits. (Tr. 47, citing 441). A repeat CT scan of Plaintiff's cervical spine in May 2010 indicated no evidence of central stenosis or neuroforaminal narrowing. (Tr. 47, citing 418-19).

Thereafter, the ALJ noted that Plaintiff's treatment remained relatively benign and consisted of recommended follow-up care only every three months. Additionally, throughout 2012, Dr. Shapiro's treatment notes reveal somatic dysfunction defined by range of motion asymmetries, tender points, and textural changes on osteopathic structural examination (Tr.604), stiffness, neuropathic dysesthesia (Tr. 605), and pain between the shoulder blades. (Tr. 608). Imaging of Plaintiff's lumbar spine and cervical spine in April 2012 continued to show no significant abnormalities. (Tr. 48, citing 550-51). Dr. Shapiro consistently observed a normal gait and station, intact balance/coordination, and a normal sensory/motor exam. (Tr. 48, 602-17). In July 2012, Dr. Shapiro noted Plaintiff's reports of reduced pain that recurred only to a minor degree. (Tr. 48, 604).

Accordingly, in discounting Dr. Shapiro's findings, the ALJ noted that Dr. Shapiro's treatment notes "routinely documented a normal neuromuscular examination." (Tr. 50, citing 602-17). Notably, the ALJ observed that although Dr. Shapiro's most recent clinical exam continued to show an absence of abnormalities, Dr. Shapiro inexplicably described Plaintiff as essentially non-functional. (Tr. 50, 599). As noted above, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.,* 195 Fed. Appx. 366, 370 (6th Cir.2006) ("The ALJ concluded, properly in our view, that the [treating physician's]

treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.,* 283 Fed. Appx. 336, 340 (6th Cir.2008) (citing *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

As more further discussed below, in evaluating Dr. Shapiro's findings, the ALJ also considered the medical opinions of consultative examining physician Dr. Bailey and state agency reviewing physicians Drs. McKee and Green, which further contradicted Dr. Shapiro's opinions. (Tr. 49).

The ALJ also considered that Plaintiff maintained a high level of function and Dr. Shapiro's own treatment notes indicated an ability to complete daily function. (Tr. 50, citing 616). In June 2013, Dr. Shapiro noted that Plaintiff reported that her medication worked well to help control the pain, such that she can function on a daily basis without any types of side effects. (Tr. 48, 616). In November 2012, Plaintiff reported that she was "very active while on vacation, doing a lot of walking." (Tr. 48, 50, 607). The ALJ noted that Plaintiff's daily activities were patently inconsistent with an inability to perform work activity. (Tr. 49). Plaintiff testified that she drove approximately five to six times per week, attended church twice per week, and continued to go out to dinner. (Tr. 49-50). Plaintiff also reported that she went vacation and that she obtained legal guardianship of her young great niece, for whom she provides at least some care. (Tr. 49, citing 467, 607).

Plaintiff argues that the ALJ improperly considered her daily activities in discounting Dr. Shapiro's opinion. While courts have questioned whether some daily

10

activities really indicate that a Plaintiff is able to work outside of the house, an ALJ is allowed and indeed obligated by the regulations to consider whether a Plaintiff's daily activities are inconsistent with her stated functional abilities. See 20 C.F.R. § 404.1529(c) (recognizing that in assessing a claimant's allegations of pain and limitation, the ALJ must make a credibility finding based on both the objective medical evidence and other evidence in the entire case record). Here, the ALJ properly considered Plaintiff's daily activities in addition to several other factors, in assessing her RFC.

Accordingly, the ALJ properly gave no weight to Dr. Shapiro's opinion because it was inconsistent with the evidence in the record. *See* 20 C.F.R. § 404.1527(d) (4) (*"Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). *See Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112–13 (6th Cir.2010) (ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes)

Conversely, the ALJ gave great weight to Dr. Bailey's opinion because he determined it was well supported and consistent with the longitudinal record. (Tr. 49). As noted above, upon examination, Dr. Bailey documented an almost entirely normal exam, including a normal range of motion of Plaintiff's back, negative straight leg raises, and a normal walking gait without the use of assistive devices. (Tr. 48-49, 480). Further, while Dr. Bailey found that Plaintiff had difficulty reaching overhead with her left arm, Dr. Bailey noted that Plaintiff had no difficulty grasping and handling objects, and noted no other exertional or non-exertional limitations. (Tr. 49, 480).

11

The ALJ also explained that Dr. Bailey's finding were consistent with those of Dr. McKee and Dr. Green, who both found that Plaintiff did experience some functional limitations from her physical impairments, but that the objective medical evidence indicated she could perform a range of light work. (Tr. 49).  Additionally, as noted by the Commissioner, the ALJ's RFC was more generous than the opinions of Dr. McKee and Dr. Green; the ALJ provided some deference to Plaintiff's allegations and further limited her to only occasional overhead reaching bilaterally, and restricted her postural movements. (Tr. 49).

In sum, the ALJ's decision indicates that he thoroughly considered the medical evidence and treatment history and properly found that they did not support a finding of disability.

### 2. Vocational Errors

Plaintiff next contends that the ALJ's reliance on the testimony of the vocational expert (VE) was not supported by substantial evidence (Pl. Br. 12-13).  Specifically, Plaintiff claims that the VE's testimony conflicts with the descriptions of jobs listed in the Dictionary of Occupational Titles ("DOT").  As such, Plaintiff maintains that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence. Plaintiff's assertion lacks merit.

At the administrative hearing, in response to hypothetical questions consistent with Plaintiff's RFC assessment as outlined above, the vocational expert testified that such an individual could perform Plaintiff's past jobs as actually or generally performed in the national economy.  (Tr. 87). The VE further testified that if such an individual could not perform those past jobs, there was other work that Plaintiff could perform,

12

including hand packer (DOT number 920.687-018) with 328,000 jobs nationally, and inspector (DOT number 739.687- 038) with 131,000 jobs nationally (Tr. 87).

Plaintiff argues that the hand packer and inspector positions identified by the VE require frequent reaching and should have been excluded given the ALJ's limitations to occasional reaching, or at a minimum, the conflict should have been addressed and resolved by the ALJ. (Doc. 7 at 12). Contrary to this assertion, the VE specifically testified that her testimony was consistent with the DOT except that the DOT did not reference overhead reaching. (Tr. 88). The VE further explained that she took the inconsistency into consideration when considering the positions she identified, and that her testimony was based on her professional experience and knowledge of work. (Tr. 88).

Moreover, the ALJ's decision explicitly states:

The vocational experts testimony is consistent with the information contained in the Dictionary of Occupational Titles. Moreover, while the Dictionary of Occupational Titles does not specifically address overhead reaching, the vocational expert testified that based on her experience and knowledge, the aforementioned jobs allow for bilateral occasional overhead reaching.

(Tr. 51).

Furthermore, the Sixth Circuit has held that an ALJ may rely on VE testimony even if there is an apparent conflict between the VE's testimony and the DOT. See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir.2009). Notably, the ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00–4p. Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held

that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir.2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.; See also* SSR 00–4p ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Moreover, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). See also *Hall v. Chater,* 109 F.3d 1255, 1259 (5th Cir.1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue,* No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D.Ky. Jan.20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p. The Sixth Circuit has also recognized that just because the DOT does not corroborate a VE's testimony that specific jobs with specific characteristics exist "does not establish that they do not exist." *Beinlich v. Comm'r of Soc. Sec.,* 2009 WL 2877930, *4 (6th Cir. Sept.9, 2009); see *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 605 (6th Cir.2009) ("The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists"); *see also Kepp v. Astrue,* 201 WL 3440078 (S.D.Ohio July 6, 2011) (Bowman, MJ) ("just because a VE's testimony concerning the existence of specified jobs is contrary to the precise description listed in the DOT 'does not establish

14

[the jobs] do not exist.' ") (internal citations omitted). Thus, even assuming there was a conflict between the VE's testimony and the DOT, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified at step five of the sequential evaluation process.

In light of the foregoing, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT:** The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and as no further matters remain pending for the Court's review, this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBYN L. STEWART,  Case No. 1:15-cv-275

    Plaintiff,  Barrett, J.
  Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).